**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONNA GLAESENER and
MICHEL GLAESENER,

        Plaintiffs,

v.

CITY OF JERSEY CITY, *et al.*,

        Defendants.

Civil Action No. 2:19-cv-18089 (CCC)

**OPINION**

**CECCHI, District Judge.**

    Currently before the Court is Defendants City of Jersey City ("Jersey City"), Sergeant James Kane ("Sergeant Kane"), Officer Nicholas Kenny, Officer Michael Salamanca, Officer Eric Rodriguez, Officer Edwin Hernandez, Officer Louis DeStefano, Officer Pierre Thomas, and Officer Andrew Sarmiento's (collectively, "Defendants")[1] motion to dismiss (ECF No. 36 ("Mot.")) Plaintiffs Donna Glaesener and Michel Glaesener's ("Plaintiff")[2] First Amended Complaint (ECF No. 32 ("Am. Compl.")) under Federal Rule of Civil Procedure 12(b)(6). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). After reviewing the submissions made in support of and in opposition to the instant motion (ECF Nos. 37 ("Opp."), 38), and for the reasons set forth below, the motion to dismiss is **GRANTED**.

---

[1] Defendant Sergeant Rossy Barzola ("Sergeant Barzola") filed an answer to the First Amended Complaint (ECF No. 35) and raised affirmative defenses therein, but she did not move to dismiss the Complaint. Therefore, claims asserted against her are not addressed in this Opinion.
[2] Because the First Amended Complaint focuses primarily on Ms. Glaesener, the term "Plaintiff" is used in the singular, but binds both Plaintiffs. *See* Am. Compl. ¶ 29.

**I. BACKGROUND**

    a. Factual Background[3]

On September 22, 2018, Plaintiff tried to park her car on a street in Jersey City, New Jersey by backing into a parking space. Am. Compl. ¶¶ 28–29. As Plaintiff attempted to back into the parking space, Sergeant Barzola – wearing street clothes – stood in the parking space and refused to move. Id. ¶ 30. Eventually, Plaintiff exited her car, and asked Sergeant Barzola to move. Id. ¶ 33. Sergeant Barzola refused to move and a verbal dispute ensued. Id. ¶¶ 33–34. Then, Sergeant Barzola allegedly initiated an altercation and "physically assaulted" Plaintiff, including by smashing her cellphone into Plaintiff's face and fracturing Plaintiff's nose. Id. ¶ 35. Sergeant Barzola did not identify herself to Plaintiff as a police officer, either before or after the alleged assault. Id. ¶ 36.

Jersey City Police Officers responded to the scene, including Defendants Sergeant Kane, Officer Nicholas Kenny, Officer Michael Salamanca, Officer Eric Rodriguez, Officer Edwin Hernandez, Officer Louis DeStefano, Officer Andrew Sarmiento, and Officer Pierre Thomas ("Responding Officers"). Id. ¶ 37. Sergeant Barzola "activated" herself as a police officer and allegedly made a false report to Responding Officers. Id. ¶ 38. Among other things, Plaintiff contends that Sergeant Barzola falsely reported that Plaintiff hit her with her car. Id. ¶ 39. Plaintiff also asserts that, as a result of Sergeant Barzola's allegedly false police report,[4] and the "intentional/reckless investigation/conspiracy" of Responding Officers and Defendant Jersey City

---

[3] The following facts are accepted as true for purposes of the instant motion.
[4] Later in the First Amended Complaint, Plaintiff asserts that members of the Jersey City Police Department ("Jersey City Police") also falsified the police report. ECF No. 32 at ¶ 63.

Police,[5] Plaintiff was arrested, jailed, charged with aggravated assault of a police officer (among other charges), and prosecuted by the Hudson County Office of the Prosecutor (the "Prosecutor"). Id. ¶¶ 41, 53–54. Sergeant Kane personally instructed other responding officers to arrest, charge, and jail Plaintiff. Id. ¶¶ 42–43. Plaintiff remained in jail for an entire weekend. Id. ¶ 52. According to Plaintiff, Responding Officers fabricated evidence, which served as the basis for the arrest, imprisonment, and prosecution. Id. ¶ 46.

After charges were filed, the Prosecutor and Jersey City Police learned that Plaintiff had a video of Sergeant Barzola's alleged assault. Id. ¶ 55. Plaintiff states that the video established, among other things, that: (1) Plaintiff's car did not hit Sergeant Barzola; (2) Sergeant Barzola was the aggressor and assaulted Plaintiff first; (3) Plaintiff tried to defend herself against Sergeant Barzola's assault; and (4) Plaintiff was subjected to unlawful arrest. Id. ¶¶ 56–57.[6] After the Prosecutor and Jersey City Police became aware of the video, Plaintiff's criminal charges were reduced from a felony to a summary misdemeanor. Id. ¶ 58. Jersey City Police told Plaintiff that the criminal charges against her would be dropped entirely if she agreed not to pursue criminal charges against Sergeant Barzola. Id. ¶ 60. Plaintiff, allegedly under duress, entered into such an agreement and all criminal charges against her were subsequently dropped. Id. ¶¶ 61–62. Sergeant Barzola was never charged with criminal offenses or arrested. Id. ¶ 48. As a result of Defendants' conduct, Plaintiff allegedly sustained economic and non-economic damages, including emotional

---

[5] The First Amended Complaint names the City of Jersey City as a defendant, not the Jersey City Police. However, a city and its police department are treated as a single entity for section 1983 liability. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).
[6] Plaintiff further alleges that "on information belief, Sergeant Barzola has committed perjury and/or falsified evidence against others who were wrongfully arrested, which was or should have been known by [D]efendants." Id. ¶ 59.

3

distress, pain, suffering, reputational harm, bodily injuries, and expenses for retaining criminal defense counsel, among other things. Id. ¶ 66.

### b. Procedural Background

On September 18, 2019, Plaintiff initiated the instant action. ECF No. 1. On November 26, 2019, all Defendants except Sergeant Barzola moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6). ECF No. 25. On September 21, 2020, the Court granted Plaintiff permission to amend her complaint and terminated the motion to dismiss. ECF No. 31. On October 19, 2020, Plaintiff filed the First Amended Complaint. Am. Compl. Under Count I, Plaintiff alleges an assortment of federal civil rights violations against all Defendants under 42 U.S.C. § 1983, including false arrest (id. ¶¶ 57, 67, 74, 81), malicious prosecution (id.), false imprisonment (id.), excessive force (id. ¶ 67), freedom of speech retaliation (id. ¶¶ 77–78), due process violations (id. ¶¶ 46, 73–74), equal protection violations (id. ¶¶ 47–51, 76), and conspiracy (id. ¶¶ 26, 41, 53–54, 57). Under Count II, Plaintiff asserts violations of the New Jersey Constitution and the New Jersey Civil Rights Act ("NJCRA") on the same bases. Id. ¶¶ 84–88. Under Count III, Plaintiff asserts various supplemental state law claims—such as assault, battery, and intentional infliction of emotional distress—with no factual enhancement. Id. ¶¶ 89–90.

On December 2, 2020, all Defendants except Sergeant Barzola filed a motion to dismiss the First Amended Complaint, arguing that the allegations against them must be dismissed because they lack the requisite plausibility and factual support. ECF No. 36. Plaintiff filed a brief in opposition on December 21, 2020 (Opp.), to which Defendants replied on December 28, 2020 (ECF No. 38).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). "[R]ote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" are disregarded. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (internal citations omitted and alteration made)

## III. DISCUSSION

The Court finds, as explained below, that: (a) Plaintiff's section 1983 and NJCRA claims asserted under Counts I and II demonstrate the personal involvement of only one Responding Officer, Sergeant Kane; (b) none of Plaintiff's section 1983 or NJCRA claims against Sergeant Kane meet the *Twombly-Iqbal* pleading standards; and (c) the section 1983 and NJCRA claims against Jersey City do not satisfy *Monell* because there are insufficient allegations concerning a pattern, practice, or custom causing the alleged constitutional violations against Plaintiff.

Therefore, Counts I and II are dismissed. Count III is dismissed because it merely lists a series of state law claims and is insufficiently pleaded.

### a) Personal Involvement of Responding Officers (Counts I and II)

First, the Court will undertake a threshold analysis under section 1983 and the NJCRA, determining whether Plaintiff has sufficiently alleged the personal involvement of each Responding Officer in the civil rights violations against her.

The NJCRA provides a cause of action for violations of civil rights secured under federal and state law; it was modeled after, and is analogous to, section 1983. *Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011). Courts often analyze the sufficiency of an NJCRA claim through the same lens as a § 1983 claim. *Id.* ("This district has repeatedly interpreted NJCRA analogously to § 1983."). Here, Defendants concede that NJCRA claims are analyzed using the same standards as section 1983 claims. *See* Mot. at 10. Plaintiff does not appear to dispute this point, nor does she present any theories of liability under the NJCRA that differ from her theories of liability under section 1983. *See* Am. Compl.; Opp. Therefore, the Court analyzes Counts I and II in conjunction.

"To state a claim under § 1983 and the NJCRA, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States or New Jersey and (2) the conduct challenged was committed by a person acting under color of state law." *Pettit*, 2011 WL 1325614, at *4 (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676; *see Baklayan v. Ortiz*, No. 11–3943, 2012 WL 1150842, at *6 (D.N.J. Apr. 5, 2012) ("Both the NJCRA and §

1983 premise liability on personal involvement in the alleged misconduct, and neither allow claims premised solely on respondeat superior."). Personal involvement can be established where the defendant (a) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or (b) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (citation omitted).

Plaintiff does not allege that any Responding Officer, with deliberate indifference, established a policy, practice, or custom that caused a violation of Plaintiff's rights. Plaintiff also fails to sufficiently allege that each Responding Officer was involved in violating her rights or was in charge of a subordinate's constitutional violation. *See* Am. Compl. ¶¶ 40, 59.[7] Instead, Plaintiff engages in vague group pleading. *See, e.g.*, Am. Compl. ¶¶ 57 ("Ms. Glaesener had been subjected to false and unlawful arrest, jailed, and prosecuted as a direct and proximate result of … the intentional/recklessness [sic] investigation/conspiracy of the responding officers and the Jersey City Police Department."), 67 ("Defendants engaged in . . ."), 74 ("As a direct and proximate result of the conduct of all defendants . . ."). Group pleading does not establish personal involvement, *see Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015), and makes it challenging to assess the personal involvement of each defendant, *see Falat v. Cty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). The only exception here is that

---

[7] On more than one occasion, Plaintiff made allegations in her opposition papers that she omitted from her First Amended Complaint. *See, e.g.*, ECF No. 37 at 11 (explaining the specific roles of Responding Officers during the arrest). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citation omitted).

Plaintiff pleads that Sergeant Kane was personally involved in the alleged constitutional violations against her because he instructed other officers to arrest, charge, and incarcerate her. Am. Compl. ¶ 42.  Sergeant Kane is also the only Responding Officer that Plaintiff alleges had "participated in the violation of [Plaintiff's] rights, directed others to violate [her] rights, and/or had knowledge of and acquiesced in his subordinate's violations of [her] rights." Id. ¶ 44.

Therefore, because Plaintiff has alleged the personal involvement of only one Responding Officer, Sergeant Kane, the section 1983 and NJCRA claims against all other Responding Officers are dismissed.

### b) Claims against Sergeant Kane (Counts I and II)

Next, the Court will analyze whether Plaintiff has sufficiently asserted that Sergeant Kane violated section 1983 or the NJCRA in directing other officers to arrest and charge her.  It finds, as explained directly below, that all the asserted bases for a section 1983 and NJCRA violation are insufficiently pleaded.

#### a. False Arrest, False Imprisonment, and Malicious Prosecution Claims

First, Plaintiff asserts that Sergeant Kane committed false arrest, false imprisonment, and malicious prosecution in violation of section 1983, by directing the unlawful arrest and prosecution against her. Am. Compl. ¶¶ 57, 67, 74, 81.  To state a claim for false arrest, false imprisonment, or malicious prosecution, the plaintiff must allege that the defendant lacked probable cause.[8] *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 606–07 (D.N.J. 2002) (internal citations omitted).[9]

---

[8] The Court will restrict its analysis to the element of probable cause and does not make any determinations regarding the other *prima facie* elements.
[9] *See James v. City of Wilkes-Barre*, 700 F.3d 675, 680, 682–83 (3d Cir. 2012) (outlining the elements of false arrest and false imprisonment claims under section 1983 and the NJCRA); *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (outlining the elements of a malicious

8

"Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (internal citation omitted); *see Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.").

As a preliminary matter, it is unclear exactly which offenses Plaintiff was arrested for and/or charged with, as she alleges that she was "charged with, *inter alia*, aggravated assault on a police officer." Am. Compl. ¶ 53 (emphasis added). Because Plaintiff does not explain what other charges she faced, it is difficult for the Court to evaluate whether there was probable cause for her arrest.[10] Plaintiff nevertheless argues that Sergeant Kane lacked probable cause to direct the arrest against her because he "knew or should have known that the information provided by Sergeant Barzola was false." Mot. at 37 (citing Am. Compl. ¶ 40).

As alleged in the First Amended Complaint, Sergeant Kane responded to a report from a fellow sergeant that a civilian struck her with a vehicle. Id. ¶ 39. Once he arrived at the scene, Plaintiff reported to officers that she and Sergeant Barzola engaged in a physical altercation, which supports Sergeant Barzola's series of events. *See* id. ¶ 34. Although Plaintiff alleges that she "honestly and completely told the police" that Sergeant Barzola was the aggressor and that she

---

prosecution claim); *Coles v. Carlini*, 162 F. Supp. 3d 380, 405 (D.N.J. 2015) (applying same analysis to malicious prosecution claim under section 1983 and the NJCRA).

[10] If the parties contest probable cause in future pleadings, they are urged to provide the criminal statutes pursuant to which Plaintiff was arrested and/or charged to help evaluate whether probable cause was satisfied. *See, e.g.*, *Morency v. City of Allentown*, No. 19-5304, 2020 WL 1935640, at *7–12 (E.D. Pa. Apr. 22, 2020).

merely acted in self-defense, Plaintiff also alleges that Sergeant Barzola "continued to insist" that her account of the story—rather than Plaintiff's—was truthful. Id. ¶ 39. Plaintiff does not allege that Sergeant Kane actually witnessed the altercation, or the video of the altercation, prior to directing Plaintiff's arrest. *See generally* Am. Compl. Instead, Plaintiff alleges that "[o]n information and belief, Sergeant Barzola has committed perjury and/or falsified evidence against others who were wrongfully arrested, which was or should have been known by defendants including, but not limited to, the Jersey City Police Department." Am. Compl. ¶ 59. Plaintiff does not explain how Sergeant Kane could have known that Sergeant Barzola falsified evidence in the past. Therefore, the Court cannot reasonably infer how Sergeant Kane knew or should have known that Sergeant Barzola's alleged description of events was false. *See Geissler v. City of Atlantic City*, 198 F. Supp. 3d 389, 398–99, 398 n.5 (D.N.J. 2016) (dismissing plaintiff's false arrest claim on the ground that probable cause existed where hotel staff allegedly falsely accused plaintiff of trespassing to the police).

Accordingly, Plaintiff fails to provide factual support for her conclusory allegation that Sergeant Kane lacked probable cause, and her false arrest, malicious prosecution, and false imprisonment claims against Sergeant Kane are dismissed.

      b. <u>Excessive Force</u>

Plaintiff also alleges an excessive force claim against Sergeant Kane. Am. Compl. ¶ 67. An excessive force claim under the Fourth Amendment requires Plaintiff to sufficiently plead that (1) a seizure occurred and (2) that seizure was unreasonable. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (internal citation omitted); *see Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011) (§ 1983 and NJCRA claims arising from excessive force are treated the same). A seizure occurs "only when government actors have, by means of physical force or show

of authority, . . . in some way restrained the liberty of a citizen." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (internal quotation marks omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396–97 (the underlying intent of the officer is not relevant) (internal citation omitted).

Here, besides the conclusory allegation that all Defendants "subject[ed] her to unreasonable force," the First Amended Complaint is devoid of any concrete allegations regarding excessive use of force. Am. Compl. ¶ 67. The Court must therefore dismiss this claim for failure to satisfy the *Twombly-Iqbal* pleading standards, as it cannot determine the reasonableness of the force applied without additional factual support. *See Kelly v. City of Newark*, No. 17-0498, 2018 WL 1378727, at *7 (D.N.J. Mar. 16, 2018) (dismissing excessive force claim because the court was "unable to identify concrete allegations or assertions regarding excessive use of force, beyond the mere contention that certain defendants acted with 'excessive force' at some unspecified time").

    c. First Amendment Retaliation

Next, Plaintiff alleges that Responding Officers retaliated against her in violation of the First Amendment of the United States Constitution. Am. Compl. ¶¶ 77–78. A First Amendment retaliation claim requires a plaintiff to sufficiently plead "(1) that [she] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "To allege the requisite causal link, the plaintiff must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly

retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).[11]

The Court finds that the first two elements are satisfied here, as Plaintiff alleges that: (1) she engaged in a protected activity when she "honestly and completely told the police what occurred" during the physical altercation between herself and Sergeant Barzola (Am. Compl. ¶ 77–78); and (2) Sergeant Kane directed other officers to arrest Plaintiff and file charges against her, which is sufficient to deter a person of ordinary firmness from exercising her constitutional rights. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (explaining that the "deterrence threshold" for the second element "is very low . . . a cause of action is supplied by all but truly de minimis violations").[12] However, Plaintiff fails to sufficiently allege the third element at this time. Although there is suggestive timing between her protected speech and subsequent arrest, there is "an obvious alternative explanation for [Responding Officers'] conduct, which negates any inference of retaliation." *George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) (finding that, in the context of a First Amendment *Bivens* claim, arresting officers' reasonable suspicion for arrest negated an inference of retaliation). Plaintiff's allegations indicate that she would have been arrested regardless of whether she engaged in constitutionally protected speech, due to the alleged false report by Sergeant Barzola. And since Plaintiff fails to allege a violation of her Fourth

---

[11] The causal connection must satisfy but-for causation. *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017). Plaintiff "must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus." *Id.* at 651–52.

[12] Plaintiff also alleges that all Responding Officers, as well as Sergeant Kane, retaliated against her by prosecuting and continuing the prosecution of Plaintiff, but there is no indication in the First Amended Complaint that Sergeant Kane prosecuted Plaintiff. *See* Am. Compl. ¶ 77–78.

Amendment rights or any indication of retaliatory animus, Plaintiff has failed to allege causation and her First Amendment claim is dismissed. *See George*, 738 F.3d at 586.

    d.  Equal Protection Claims

Plaintiff also asserts that she suffered a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Am. Compl. ¶¶ 47–51, 76. An equal protection claim may be brought pursuant to two theories of liability: a "selective enforcement" and/or a "class-of-one" theory of liability. *Simmermon v. Gabbianelli*, 932 F. Supp. 2d 626, 631 (D.N.J. 2013). Plaintiff proceeds on a selective enforcement theory of liability, as she alleges that she was "selectively arrested, incarcerated, and criminally charged . . . based on her race and her status as someone not employed by the Jersey City Police Department and/or as a police officer." Am. Compl. ¶ 50; *see* id. ¶ 81 (alleging "selective arrest and/or prosecution"); Opp. at 19 (arguing the merits of a selective enforcement claim).

To establish that her equal protection rights were violated by selective enforcement of a law or policy, or by selective prosecution, Plaintiff must demonstrate: "(1) that [she] was treated differently from other similarly situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." *Karns v. Shanahan*, 879 F.3d 504, 520-21 (3d Cir. 2018); *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013).[13] Persons or parties are "similarly situated" for Equal Protection Clause purposes when "they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008).

---

[13] The standards for selective enforcement and selective prosecution claims are identical. *Davis v. Malitzki*, 451 Fed. App'x 228, 234, n.11 (3d Cir. 2011).

Here, there are insufficient facts from which the Court can reasonably infer that Sergeant Kane directed Plaintiff's arrest with a discriminatory purpose or to prevent the exercise of a fundamental right. For instance, although Plaintiff alleges, in a conclusory fashion, that her experience was "one of several examples" of Responding Officers' selective enforcement (Am. Compl. ¶ 51), she does not include any specific examples of possibly disparate treatment, besides the sole incident that is the focus of her First Amended Complaint (*see generally* id.). Therefore, Plaintiff fails to state a selective enforcement claim. *See PG Pub. Co.*, 705 F.3d at 115 (Plaintiff must show that the administration of laws has not only "resulted in unequal application to those who are entitled to be treated alike, but also that there is an element of intentional or purposeful discrimination."); *Stein v. City of Philadelphia*, No. 13-4644, 2014 WL 1395040, at *2–3 (E.D. Pa. Apr. 8, 2014) (dismissing selective enforcement claim under Rule 12(b)(6) because plaintiff "fail[ed] to cite any facts from which a reasonable juror could conclude that [the policeman] acted with an improper [discriminatory] motive").

e. Due Process

Next, Plaintiff appears to allege a due process violation under the Fourteenth Amendment of the United States Constitution. *See* Am. Compl. ¶¶ 74 ("As a direct and proximate result of the conduct of all defendants, committed under the color of state law, [Plaintiff] was deprived of her right to be free from unlawful and false arrest, malicious prosecution, false imprisonment, to be secure in her person and property, and to due process of law.") (emphasis added). Although it is unclear, it appears that the facts supporting Plaintiff's due process claim are the same as those supporting her more specific constitutional claims under the Fourth Amendment. *See* Opp. at 24 (Plaintiff argues that the alleged assault, false arrest, imprisonment, and continued prosecution constitute the violated liberty interests under the due process clause) (citing Am. Compl. ¶¶ 34–

62). "Under the 'more-specific-provision' rule, if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Ballister v. Union Cty. Prosecutor's Homicide Task Force*, No. 15-7655, 2017 WL 825217, at *4 (D.N.J. Mar. 2, 2017) (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (internal brackets omitted). Accordingly, Plaintiff's due process claim is dismissed. *See Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) (finding that "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis"); *see also Baker v. McCollan*, 443 U.S. 137, 142–43 (1979) (interpreting section 1983 false imprisonment claim as grounded in Fourth Amendment rights); *Ballister*, 2017 WL 825217, at *4 (dismissing due process claim because it appeared to be asserted on the same basis as plaintiff's more specific constitutional claims under the Fourth and Sixth Amendment of the United States Constitution).[14]

    f. Conspiracy

Lastly, Plaintiff alleges that all Defendants, including Sergeant Kane, participated in a conspiracy to deprive Plaintiff of her constitutional rights. Am. Compl. ¶¶ 26, 41, 53–54, 57. "Allegations of a conspiracy must provide some factual basis to support the elements of a

---

[14] Some courts have held that due process can support a malicious prosecution claim if the claim is procedural, as opposed to substantive. *See Lewis v. City of Philadelphia*, No. 19-2847, 2020 WL 1683451, at *7 (E.D. Pa. Apr. 6, 2020) (collecting cases discussing whether a Fourteenth Amendment malicious prosecution claim is barred as a matter of law under the more-specific provision doctrine). However, in her opposition papers, Plaintiff does not appear to contest Defendants' argument that the due process claim is subsumed by the Fourth Amendment (*see* Opp. at 24). Moreover, Plaintiff fails to sufficiently allege what process was owed and how that process was violated by Sergeant Kane, which is essential for a procedural due process claim. *See Washington v. Hanshaw*, 552 Fed. App'x 169, 174 (3d Cir. 2014).

conspiracy: agreement and concerted action." *Bryant v. Salem Cty.*, No. 18-837, 2019 WL 2588804, at *6 (D.N.J. June 24, 2019) (quoting *Capogrosso* v. *Sup. Ct. of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009)) (internal brackets omitted). Here, Plaintiff does not allege any facts from which the Court could reasonably infer that Defendants made an agreement, direct or otherwise, to deprive her of her constitutional rights. Instead, Plaintiff makes conclusory allegations. *See, e.g.*, Am. Compl. ¶ 26 ("At all times material hereto, all defendants acted in concert and conspiracy . . ."). Therefore, her conspiracy claim is dismissed. *See Cortese v. Sabatino*, No. 18-3804, 2019 WL 1227842, at *7 (E.D. Pa. Mar. 15, 2019) (dismissing conspiracy claim because "[t]he [c]omplaint [wa]s devoid of any allegations suggesting the existence of a conspiracy, and Plaintiff d[id] not allege that the Officers had an agreement or that there was a meeting of the minds to violate his constitutional rights").[15]

### c) Claims against Defendant Jersey City (Counts I and II)

In addition to asserting the aforementioned section 1983 and NJCRA claims against the individual defendants (*i.e.*, the Responding Officers), Plaintiff asserts section 1983 and NJCRA claims against Jersey City under Counts I and II. Specifically, she asserts a "policy or custom" claim, *see* Am. Compl. ¶ 65, and failure to train, failure to discipline, and failure to supervise claims against Jersey City, *see* id. ¶¶ 81–82. Both types of claims are insufficiently pleaded here.

First, to assert a policy or custom claim, "a plaintiff must allege that 'a local government's policy or custom inflicted the injury in question.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir.) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (internal brackets

---

[15] Responding Officers also argue for qualified immunity. Mot. at 14–17. The Court does not address their qualified immunity arguments at this time given the pleading deficiencies and other grounds for dismissal.

16

omitted). A policy is established when a decisionmaker with final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). On the other hand, a custom is a practice of officials that while not legally authorized, is "so permanent and well settled" as to virtually constitute law. *Id.* at 698. Here, Plaintiff fails to establish a policy or custom claim because "other than some wholly conclusory and highly generalized assertions about unspecified patterns of misconduct, [Plaintiff] pleaded no facts to support the existence of any policy, custom, or practice beyond those involving [her interactions]." *Phillips v. Northampton Cnty.*, 687 Fed. App'x 129, 132 (3d Cir. 2017); *see* Am. Compl. ¶¶ 81–82; *Geissler v. City of Atlantic City,* 198 F. Supp. 3d 389, 396 (D.N.J. 2016) ("Having failed to identify any municipal policy or custom in her Complaint, Plaintiff fails to state a claim against the City . . . under § 1983 and the [NJCRA].").[16]

Plaintiff's failure to train, failure to supervise, and failure to discipline claims do not require an allegation of unconstitutional policy. *Forrest*, 930 F.3d at 105 (citing *Estate of Roman*, 914 F.3d at 798). However, these claims have the "equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.*[17] Here, Plaintiff makes no factual allegation indicating a pattern of allegedly similar constitutional

---

[16] The Court does not determine whether Plaintiff has demonstrated causation at this stage. *See Beck v. City of Pittsburgh,* 89 F.3d 966, 972 n.6 (3d Cir. 1996) ("[P]roof of the existence of an unlawful policy or custom alone is insufficient to maintain a § 1983 action. The plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered.").
[17] A plaintiff establishes deliberate indifference "by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (internal brackets omitted).

violations, which is "'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). Furthermore, Plaintiff has not demonstrated or explained a causal connection between her injuries and the failure to train, supervise, or discipline. *See City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Therefore, Plaintiff has failed to establish deliberate indifference on behalf of Jersey City and the *Monell* claims against it are dismissed. *See Kilgarriff v. Strunk*, No. 18-10120, 2019 WL 1434763, at *5 (D.N.J. Mar. 31, 2019) (dismissing failure to train and failure to supervise claims against municipality, despite conclusory allegation that the municipality was aware of constitutional violations, because plaintiff provided only one example of a constitutional violation and thus did not "provide a factual underpinning to [p]laintiff's claims of a city-wide policy, custom, or training failure that proximately caused [p]laintiff's injuries").

Accordingly, Plaintiff fails to state a claim for relief against Defendants under section 1983 or the NJCRA, and Counts I and II are dismissed.

    **c. Supplemental State Law Claims (Count III)**

Under Count III of the First Amended Complaint, Plaintiff alleges violations of nine different common law causes of action. Am. Compl. ¶¶ 89–90. However, she does not allege any factual matter in support of those claims or even list the *prima facie* elements of each claim. *See id.* Without any factual enhancement or explanation to substantiate these causes of action, Count III is dismissed. *See Iqbal*, 556 U.S. at 678.

**III. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss (ECF No. 36) Plaintiff's First Amended Complaint (ECF No. 32) is granted. All claims asserted against Defendants Jersey City, Sergeant Kane, Officer Nicholas Kenny, Officer Michael Salamanca, Officer Eric Rodriguez, Officer Edwin Hernandez, Officer Louis DeStefano, Officer Pierre Thomas, and Officer Andrew Sarmiento are dismissed without prejudice. All claims asserted against Defendant Sergeant Barzola may proceed at this time. Plaintiff may file a second amended complaint that cures the pleading deficiencies discussed herein within thirty (30) days of the date of this Opinion.[18]

An appropriate order accompanies this Opinion.

**Date:** September 15, 2021

**HON. CLAIRE C. CECCHI, U.S.D.J.**

---

[18] The First Amended Complaint does not separate each cause of action under section 1983 (*e.g.*, false imprisonment, false arrest, equal protection violation, etc.) into different counts, and it asserts multiple claims against multiple defendants without specifying the defendants against whom the claim is asserted. *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). To the extent that Plaintiff repleads, she is expected to clearly articulate the basis for each claim, the factual allegations used to support each claim, and the factual allegations against each individual defendant against which a given claim is brought. Plaintiff is also highly encouraged to separate each discrete cause of action under section 1983 into separate counts, and to separately assert her causes of action against Jersey City.